**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**BRIAN P. HANNA,**

        **Petitioner,**

   **v.**                         **CASE NO. 2:05-CV-727**
                                      **JUDGE GRAHAM**
**ROB JEFFREYS, Warden,**          **MAGISTRATE JUDGE KING**

        **Respondent.**

**REPORT AND RECOMMENDATION**

    Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  This matter is before the Court on the instant petition, respondent's return of writ, petitioner's traverse, respondent's reply, petitioner's response, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED** as untimely.

**I.  FACTS**

    This case involves the following facts, as summarized by the Fifth District Court of Appeals:

> Ashley Ward is appellant's step-daughter. When Ashley was about eleven years old, appellant began touching her breasts, kissing her on the lips, and touching her vaginal area with his hands and his mouth. Appellant also had Ashley touch his penis with her hands and her mouth. Appellant was married to Ashley's mom, Brenda, and engaged in this conduct while Brenda was at a friend's house or at work. The sexual contact with Ashley occurred about once a week, for a period of about a year.

> In October of 2000, Brenda asked Ashley if appellant "messed with her." When Ashley responded that he had, Brenda confronted appellant. Brenda asked appellant if there was anything going on. He admitted that there was, but did not indicate any specific acts. Appellant took Brenda and her children to Pennsylvania in the middle of the night, telling Brenda that he was going to get help.

> After becoming aware of Ashley's accusations against appellant, Detective Robert Durbin of the Knox County Sheriff's Department contacted appellant by telephone on October 31, 2000. During the telephone interview, appellant admitted that he had sexually abused Ashley. He indicated that this occurred over a period of a little less than a year. He admitted that it started as fondling, but eventually, Ashley performed oral sex on appellant, and he admitted to performing oral sex on Ashley as well. He told Detective Durbin that the last incident occurred a few days prior to the fight with Brenda concerning the problems with Ashley. He said that while in Pennsylvania, he tried to kill himself by strangling himself. He told the detective that Ashley was eleven years old when all of this started.

Exhibit 14 to Return of Writ.

## II.  PROCEDURAL HISTORY

Petitioner was indicted by the Knox County grand jury on one count of rape, in violation of O.R.C. §2907.02(A)(1)(b).  Exhibit 1 to Return of Writ.  While represented by counsel, petitioner proceeded to jury trial and, on June 26, 2001, was found guilty as charged.  Exhibit 3 to Return of Writ.  On July 20, 2001, petitioner was sentenced to ten years in prison.  Exhibit 3 to Return of Writ.  Still represented by the same counsel, petitioner filed a timely appeal of his conviction to the Fifth District Court of Appeals.  He asserted the following assignments of error:

> 1.  The trial court erred in giving the defendant the maximum sentence.
>
> 2.  The trial court erred in penalizing defendant for exercising his right to a jury trial.

Exhibit 4 to Return of Writ.  On May 9, 2002, the appellate court affirmed the judgment of the trial court.  Exhibit 5 to Return of Writ.  Petitioner apparently never filed an appeal of the appellate court's decision to the Ohio Supreme Court.  However, on August 8, 2002, petitioner filed a *pro se* "Notice of Murnahan Motion Appeal."  Exhibit 10 to Return of Writ.  Petitioner's motion to reopen

2

the appeal was granted, and new counsel was appointed on petitioner's behalf.  *See* Exhibits 10 and 14 to Return of Writ.  On November 25, 2003, the appellate court affirmed the judgment of the trial court.  Exhibit 14 to Return of Writ.  Petitioner again failed to file an appeal of the appellate court's decision to the Ohio Supreme Court.  On September 3, 2003, however, petitioner filed a *pro se* petition for post conviction relief with the state trial court.  Exhibit 15 to Return of Writ.  On October 2, 2003, the trial court denied the petition as untimely.  Exhibit 17 to Return of Writ.  On November 7, 2003, petitioner filed an appeal of the trial court's decision; however, on December 15, 2003, the appellate court dismissed his appeal as untimely.  Exhibit 20 to Return of Writ. Petitioner never filed an appeal of the appellate court's decision to the Ohio Supreme Court.  On January 26, 2004, petitioner filed a *pro se* second application to reopen the appeal pursuant to Ohio Appellate Rule 26(B).  Exhibit 21 to Return of Writ.  On February 17, 2004, the appellate court denied the application as improper under Ohio law.  Exhibit 24 to Return of Writ.  Petitioner never filed an appeal of the appellate court's decision. On December 1, 2004, petitioner filed a *pro se* third application to reopen the appeal pursuant to Ohio Appellate Rule 26(B).  Exhibit 25 to Return of Writ.  On January 13, 2005, the appellate court again denied the application as improper under Ohio law.  Exhibit 26 to Return of Writ.  Petitioner filed a timely appeal of the appellate court's decision to the Ohio Supreme Court.  Exhibit 27 to Return of Writ.  On June 29, 2005, the Ohio Supreme Court declined jurisdiction to hear the case and dismissed the appeal as not involving any substantial constitutional question.  Exhibit 28 to Return of Writ.

On July 28, 2005, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

1.    Sentenced to more than the statutory maximum sentence authorized by verdict of the jury on the offense alone.

2.    Further punishment was sanctioned against petitioner for exercising his right to a jury trial.

3.  Petitioner filed an App.R. 26(B) for second time for ineffective counsel on second appellate counsel.  Appellate court denied motion without opposition.

4.  Petitioner was sentenced to post release control by the Adult Parole Authority without authorization by sentencing judge.

It is the position of the respondent that this action must be dismissed as untimely.

### III. STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which became effective on April 24, 1996, provides for a one-year statute of limitations on the filing of habeas corpus actions.  28 U.S.C. §2244(d)(1) provides:

(d)(1) A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court.  The limitation period shall run from the latest of -

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. §2244(d)(1),(2).

Here, petitioner's conviction became final on June 24, 2002, forty-five days after the appellate court's May 9, 2002, decision denying his direct appeal, when the time period expired to file a timely appeal to the Ohio Supreme Court. *See* Ohio Supreme Court Rule of Practice II, Section 2(A)(1); *Marcum v. Lazaroff*, 301 F.3d 480, 481 (6th Cir. 2002); *Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001).[1]  The statute of limitations ran for forty-four days, until August 8, 2002, when petitioner filed his application to reopen the appeal pursuant to Ohio Appellate Rule 26(B) in the state appellate court.  The statute of limitations was tolled for the time during which such action was pending,  until November 23, 2003, when the appellate court denied petitioner's application, as petitioner never filed a timely appeal of the appellate court's decision to the Ohio Supreme Court. 28 U.S.C. §2244(d)(2); *Evans v. Chavis*, 126 S.Ct. 846, 848-49 (2006):

> The time that an application for state postconviction review is "pending" includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, provided that the filing of the notice of appeal is timely under state law. *Carey v. Saffold*, 536 U.S. 214 (2002).

*Id.; see also Lopez v. Wilson* 426 F.3d 339, 353 (6th Cir. 2005)(holding that 26(B) proceeding constitutes a collateral post conviction remedy); *Bronaugh v. Ohio*, 235 F.3d 280, 285 (6th Cir. 2000).  The statute of limitations then began to run again and expired one year later, on November

---

[1]  According to respondent, June 23, 2002, was a Sunday, and petitioner therefore had until June 24, 2002, to file a timely appeal to the Ohio Supreme Court. *Return of Writ*, at 8 n.3.

23, 2004. The instant habeas corpus petition was not filed until July 28, 2005, nor signed until July 18, 2005. Further, none of petitioner's subsequent state court filings tolled the running of the statute of limitations, as such actions were not "properly filed" under 28 U.S.C. §2244(d)(2).

Petitioner's October 2, 2003, petition for post conviction relief was dismissed by the state courts as untimely. *See Pace v. DiGuglielmo*, 125 S.Ct. 1807, 1814 (2005). Similarly, petitioner's January 26, 2004, and December 1, 2004, second and third attempted applications to reopen the appeal pursuant to Ohio Appellate Rule 26(B) were denied by the state courts as improper under Ohio law. *See* Exhibits 24 and 26; *Artuz v. Bennett*, 531 U.S. 4, 8 (2000)(an application is " *properly* filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings.)

> In order for tolling to apply, the state actions must have been filed in the proper court in a timely fashion. *See Austin v. Mitchell,* 200 F.3d 391, 395 & n. 2 (6th Cir.1999), *cert. denied,* 120 S.Ct. 2211 (2000). Attempts to seek relief through avenues that are not available do not meet that requirement. None of the state proceedings were an application for state post-conviction relief recognized as such under governing state procedures. *See Adeline v. Stinson,* 206 F.3d 249, 252 (2d Cir. 2000).

*Williams v. Brigano*, 238 F.3d 426, unpublished, 2000 WL 1871682 (6th Cir. December 11, 2000).

Thus, the statute of limitations expired in November 2004. The instant action, filed on July 2005, is untimely.

Petitioner nonetheless contends that equitable tolling of the statute of limitations is appropriate because he was ignorant of the filing requirements for federal habeas corpus petitions, because he is a *pro se* litigant, because his attorneys failed to advise him regarding the time limitations for filing habeas corpus petitions, because his attorneys failed to pursue appeals with the

6

Ohio Supreme Court despite his requests that they do so, and because he exercised due diligence in pursuing his claims. *See Petitioner's Reply*, Doc. No. 10.  In support of these allegations, petitioner has attached  correspondence between himself and the Ohio Public Defender, and other attorneys. *See Exhibits to Petitioner's Response*, Doc. No. 8.  Additionally, petitioner asserts that his attorney told him to pursue a successive 26(B) application to present his claim that his sentence violates *Blakely v. Washington*, 542 U.S. 296 (2004), to the state courts. *See id.; Petitioner's Reply.*[2]

"[P]etitioner bears the... burden of persuading the court that he or she is entitled to equitable tolling." *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002).  Equitable tolling should be used sparingly. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002); *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000).  "Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Id.* at 560-61.

> The Supreme Court has explained that "[w]e have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96 (1990). However, "[w]e have generally been much less forgiving ... where the claimant failed to exercise due diligence in preserving his legal rights." *Id.; cf. Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984)

---

[2]  On July 7, 2004, petitioner wrote to the Ohio Public Defender, asking how to pursue various claims in the state courts. *Exhibit 24 to Petitioner's Response*.  On August 12, 2004, the office of the public defender advised him that that office could not provide him with legal assistance or advice. *Exhibit 25 to Petitioner's Response*.  Nonetheless, on October 4, 2004, petitioner apparently received a letter from his trial counsel, who was employed with the public defender's office, in which counsel referred petitioner to Ohio Appellate Rule 26(B).  *See Exhibit 26 to Petitioner's Response*.   The record does not reflect whether counsel was aware that petitioner had already pursued a 26(B) application.

> ("One who fails to act diligently cannot invoke equitable principles
> to excuse that lack of diligence.").

*Jurado v. Burt*, 337 F.3d 638, 642-43 (2003).  In order to determine whether to equitably toll the

statute of limitations, the Court must consider the following five factors:

> (1) the petitioner's lack of notice of the filing requirement; (2) the
> petitioner's lack of constructive knowledge of the filing requirement;
> (3) diligence in pursuing one's rights; (4) absence of prejudice to the
> respondent; and (5) the petitioner's reasonableness in remaining
> ignorant of the legal requirement for filing his claim.

*Id.*, at 643, citing *Dunlap v. United States*, 250 F.3d 1001, 1008 (6th Cir. 2001); *Andrews v. Orr*, 851

F.2d 146, 151 (6th Cir. 1988).

Lack of actual notice, and "ignorance of the law, even for an incarcerated *pro se* petitioner,

generally does not excuse [late] filing." *Fisher v. Johnson,* 174 F.3d 710, 714-15 (5th Cir.1999); *see*

*also United States v. Baker,* 197 F.3d 211, 218 (6th Cir. 1999); *Rose v. Dole*, 945 F.2d 1331, 1335

(6th Cir. 1991); *Winkfield v. Bagley*, 66 Fed.Appx. 578, unpublished, 2003 WL 21259699 (6th Cir.

May 28, 2003).

> Even those not versed in the law recognize the centuries-old maxim
> that "ignorance of the law is no excuse." This maxim, deeply
> embedded in our American legal tradition, reflects a presumption that
> citizens know the requirements of the law. The benefits of such a
> presumption are manifest. To allow an ignorance of the law excuse
> would encourage and reward indifference to the law. Further, the
> difficulty in proving a defendant's subjective knowledge of the law
> would hamper criminal prosecutions.

*United States v. Baker, supra*, 197 F.3d at 218.

Contrary to petitioner's allegations here, the record fails to reflect that he lacked notice or

constructive knowledge of the one-year filing requirement for habeas corpus actions.  Additionally,

petitioner would not have been reasonable in remaining ignorant of the statute of limitations for the time period at issue.  Although egregious attorney misconduct may warrant equitable tolling of the statute of limitations, *see United States v. Martin*, 408 F.3d 1089, 1095-96 (8th Cir. 2005), the record fails to reflect such circumstances here.

> Ineffective assistance of counsel, where it is due to an attorney's negligence or mistake, has not generally been considered an extraordinary circumstance... *Beery v. Ault*, 312 F.3d 948, 951 (8th Cir. 2002); *see also Rouse v. Lee*, 339 F.3d 238, 248-49 (noting that a majority of the circuits have held that basic attorney errors such as miscalculation of a filing deadline are generally insufficient to support equitable tolling).

*Id.,* at 1095.  Further, the record simply fails to reflect that petitioner exercised due diligence in pursuing his rights.  He never filed an appeal of the appellate court's May 9, 2002, decision denying his direct appeal to the Ohio Supreme Court.  He failed to file a timely appeal of the appellate court's November 25, 2003, decision denying his 26(B) application, despite being advised by his attorney in a letter dated December 18, 2003, of the time requirement to do so.  Similarly, his petition for post conviction relief was dismissed as untimely, as was his subsequent appeal of the trial court's decision.  He spent seven months pursuing a third 26(B) application in the state courts, despite being explicitly advised by the state appellate court on January 26, 2004, that successive 26(B) applications are not permitted under Ohio law.  *See* Exhibit 24 to Return of Writ.  Finally, the respondent certainly will suffer some prejudice, if only in terms of time and expense, were this Court to equitably toll the statute of limitations here.

Further, 28 U.S.C. §2244(d)(1)(C) does not serve to delay the date that the statute of limitations began to run as to petitioner's claim that his sentence violates *Blakely v. Washington, supra,* because *Blakely* is not retroactively applicable to cases on collateral review.  *Humphress v.*

*United States*, 398 F.3d 855, 860 (6th Cir. 2005); *United States v. Saikaly*, 424 F.3d 514, 517 n.1 (6th Cir. 2005).

Likewise, although claim four appears to implicate the Ohio Supreme Court's recent holding in *Hernandez v. Kelly*, – N.E.2d –, 2006 WL 120823 (Ohio January 12, 2006)(granting a petition for a writ of habeas corpus and holding that the Ohio Adult Parole Authority cannot exercise post release control authority where the trial court failed to advise the defendant that he would be subject to post release control), 28 U.S.C. §2244(d)(1)(C) does not serve to delay the date that the statute of limitations began to run as to such claim, since the claim does not involve a right of constitutional magnitude that has been newly recognized by the United States Supreme Court and made retroactively applicable to cases on collateral review. *See id.*[3]

In view of all of the foregoing, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED** for failure to comply with the one-year statute of limitations under 28 U.S.C. §2244(d).

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or

---

[3] The Court also notes that claim four may be unexhausted.

recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED**.

February 22, 2006                           *s/Norah McCann King*
                                                    Norah McCann King
                                                    United States Magistrate Judge

11